[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11913
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cv-00021-LGW-GRS


KENNETH WAITHE,
Individually and on behalf of All Others Similarly Situated,
LINDA WAITHE,
Individually and on behalf of All Others Similarly Situated,

Plaintiffs - Appellants,

versus

ARROWHEAD CLINIC, INC.,
ARROWHEAD MANAGEMENT, INC.,
HARRY W. BROWN, INC.,
H. BROWN MANAGEMENT COMPANY, LLC,
HARRY W. BROWN, JR.,
LEGAL COUNSEL, INC.,
ROBERT D. STEIN,
ROBERT D. STEIN,
agent of Robert D. Stein & Associates,

Defendants - Appellees,

HARRY W. BROWN, SR.,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 26, 2012)

Before CARNES, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

This case involves a business relationship between a chiropractic clinic and a law firm. As a result of that relationship, two chiropractic patients who had been injured in a car accident were referred to lawyers who handled their personal injury claims. After the patients completed their chiropractic treatments and settled their personal injury claims, they filed this lawsuit against the corporate entities that operated the chiropractic clinic, the chiropractor in charge of one of those corporations, the law firm that handled their personal injury claims, the corporation that managed the law firm's business, and the firm's named partner. The district court dismissed some of the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) and later granted summary judgment to the defendants on all of the remaining claims. This is the plaintiffs' appeal.

2

I.

Kenneth and Linda Waithe were in a car accident on January 1, 2005. Soon after the accident they contacted the Arrowhead Clinic in Hinesville, Georgia for chiropractic treatment and made an appointment for January 6, 2005. During their first visit to the clinic, the Waithes met with a representative from Robert D. Stein's law office and they each signed several documents, including a "Doctor Referral Confirmation" agreement. They allege that they did not ask for an attorney referral but were told "to sign the documents if they wanted treatment."[1] The Doctor Referral Confirmation agreement states that the Waithes had asked their doctor to refer them to an attorney to handle their personal injury claims arising from the car accident. The agreement also states that they had asked their doctor to "arrange an appointment and/or interview" with attorney Robert Stein, Robert Mayhue, or an investigator from the lawyers' office.

The Waithes each signed an "Attorney Recommendation Form," stating that

---

[1]Some of the claims in this case were decided at the motion to dismiss stage, and the others were decided later on summary judgment. When a case is decided on a motion to dismiss, we take the facts from the plaintiff's complaint and the attached exhibits as true. Alvarez v. Att'y Gen. for Fla., 679 F.3d 1257, 1259 (11th Cir. 2012). When a case is decided on summary judgment, we view the facts in the light most favorable to the nonmoving party, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1251 n.1 (11th Cir. 2012). This opinion first recounts the relevant facts and then separately considers the claims that were dismissed and those on which summary judgment was granted, considering the facts that were before the district court at the particular point when it decided each claim and viewing those facts in the appropriate light.

3

they had asked their doctor to recommend a personal injury lawyer and that their doctor had recommended Stein and Mayhue, among others. The form states that the Waithes agreed to speak with the lawyers' investigator and that they understood that they were "doing so without any obligation" on their part or on the lawyers' part and that the investigator was not a lawyer and would not provide any legal advice.

Also during their first visit to the chiropractic clinic, the Waithes signed a "Retainer Agreement" with attorneys Stein, Mayhue, and Christopher Ringue, agreeing to pay them 40 percent of the gross amount of any recovery on their personal injury claims. They signed an "Assignment of Benefits and Doctor's Lien," directing their insurance companies to pay the chiropractic clinic and giving their doctor a lien against any recovery obtained on their personal injury claims. Finally, the Waithes signed an "Agreement of Patient and Attorney Regarding Payment of Benefits and Doctor's Lien," authorizing the clinic to give their attorneys and insurance companies medical information about the injuries they sustained on the day of the car accident. That agreement also authorized their attorneys to use the money recovered on their personal injury claims to pay any unpaid balance owed to their doctor. Even though they signed all of these agreements, the Waithes contend that they were not informed of the "business

4

relationship" between the chiropractic clinic and the lawyers who handled their personal injury claims.

In May 2005 the Waithes settled their claims arising from the January car accident. They each signed a "Settlement Statement" providing that they had authorized their attorneys, Stein, Mayhue, and Ringue, to settle their claims in the amount of $7,750 for Ms. Waithe and $7,750 for Mr. Waithe. From those amounts, $3,100 was deducted for the agreed upon amount of attorney's fees, and $250 was deducted for the law firm's expenses, which left the Waithes with $4,400 each. No part of the settlement was used to pay medical bills at the chiropractic clinic.

The Waithes each paid $100 to the chiropractic clinic on their initial visit there in January 2005, but that $200 is the only payment they made to the clinic. Their bills for chiropractic treatments were paid by insurance. In November 2007 the Waithes received from the chiropractic clinic a refund check for $200, which they cashed.

## II.

The Waithes filed this lawsuit as a putative class action in Georgia state court against these people and companies, which we will collectively refer to as the chiropractor defendants: Harry W. Brown, Sr.; Harry W. Brown Jr.;

5

Arrowhead Clinic, Inc.; Arrowhead Management, Inc.; Harry W. Brown, Inc.; and H. Brown Management Co., LLC.  The Waithes also named as defendants these people and companies, which we will collectively refer to as the lawyer defendants:  Robert D. Stein; Robert D. Stein d/b/a The Law Offices of Robert D. Stein & Associates; and Legal Counsel, Inc.

After the case was removed to federal district court, the Waithes filed a "First Amended and Recast Complaint," dismissing Harry W. Brown, Sr. as a defendant, and listing eight counts.  Count one alleged professional negligence against the lawyer defendants.  Count two alleged professional negligence against the chiropractor defendants.  Count three alleged "fraud/constructive fraud" against all of the defendants based on their failure to disclose their "business relationship."  Count four alleged "fraud/constructive fraud" against all of the defendants based on their "failure to properly credit patient accounts."  Count five alleged negligence against all of the defendants.  Count six alleged breach of fiduciary duty against all of the defendants.  Counts seven and eight did not assert a cause of action but instead sought relief in the form of attorney's fees (count seven) and punitive damages (count eight).

## A.

The chiropractor defendants filed a motion to dismiss all of the counts

6

against them under Federal Rule of Civil Procedure 12(b)(6). The court granted their motion on all of the claims except negligence (count five). It gave the Waithes an opportunity to amend their complaint on the fraud claim based on the alleged failure to disclose a "business relationship" (count three), instructing them to "submit particularized allegations of fraud against each Defendant for failure to disclose the alleged business relationship." The court denied the chiropractor defendants' motion to dismiss on the counts of the Waithes' complaint that sought attorney's fees (count seven) and punitive damages (count eight) because at that point in the proceedings, there were still substantive claims that could possibly support an award of those types of relief.

## B.

In their second amended complaint, the Waithes again alleged "fraud/constructive fraud" based on the defendants' alleged failure to disclose their "business relationship" (count three). All of the defendants moved to dismiss the second amended complaint under Rule 12(b)(6). The lawyer defendants had not joined the chiropractor defendants' earlier motion to dismiss, so all of the counts alleged against them were still pending. The district court granted the motions to dismiss only on the fraud-based claims.

The court ruled that, even as amended, allegations of fraud in count three

7

failed to state a claim against any of the defendants.  The count four fraud claim against the lawyer defendants based on "failure to properly credit patient accounts" was dismissed on the same grounds as the earlier dismissal of that claim against the chiropractor defendants: the Waithes failed to allege scienter, an element of a fraud claim, and as for constructive fraud, the Waithes failed to identify a breach of any duty by any of the defendants.

## C.

All of the defendants later moved for summary judgment on the claims that remained.  Negligence (count five) was the only claim pending against the chiropractor defendants.  Three claims remained against the lawyer defendants: professional negligence (count one), negligence (count five), and breach of fiduciary duty (count six).  The court granted summary judgment for the defendants on all of the claims.  Because the substantive claims failed as a matter of law, the court denied Waithes' request for attorney's fees (count seven) and punitive damages (count eight).

We will first address the Waithes' contentions about the claims that were dismissed under Rule 12(b)(6) and then their contentions about the claims on which the district court granted summary judgment for the defendants.  We review de novo a district court's grant of a motion to dismiss, Butler v. Sheriff of Palm

Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012), and its grant of a motion for

summary judgment, Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1254

(11th Cir. 2012).

### III.

The Waithes contend that they have stated a claim for fraud based on the

allegation that the chiropractor defendants failed to properly credit their account

(count four). The Waithes contend that when the district court granted the

chiropractor defendants' Rule 12(b)(6) motion on this claim, it "overlooked the

dispute in the record" about whether the chiropractor defendants "knew from the

bookkeeping system" that the Waithes' $200 payment to the clinic was

"improperly retained." They argue that, even though they eventually received a

$200 refund, they are entitled to interest. They do not assert, however, that they

had ever requested a refund from the clinic before they inquired about the alleged

overpayment.

The district court's Rule 12(b)(6) dismissal of this fraud claim was based on

the Waithes' first amended complaint, which alleged that the chiropractor

defendants "accepted funds from third party providers which were to be utilized

for the sole purpose of paying for chiropractic services rendered to" the Waithes.

The first amended complaint also alleged that the "[f]ailure to properly credit the

9

patient accounts caused the Defendants to be over-compensated for chiropractic services provided." The complaint goes on to allege that "[u]pon discovery of this over-compensation" the Waithes were entitled to full repayment plus interest, but they received no interest. There is no allegation about who "discover[ed]" the "over-compensation" or when or how the discovery was made.[2]

To state a claim for fraud under Georgia law, the plaintiff must allege: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. Stiefel v. Schick, 398 S.E.2d 194, 195 (Ga. 1990). To establish scienter, a plaintiff must show that the defendant made a knowing misrepresentation with the intent to deceive; an innocent misrepresentation is not enough. See Ideal Pool Corp. v. Baker, 377 S.E.2d 511, 513 (Ga. Ct. App. 1988). To satisfy the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b), a plaintiff bringing a fraud claim must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." Hopper

---

[2]In their brief to this Court, the Waithes assert that the $200 was refunded to them "only after the Plaintiffs in a related lawsuit discovered the fact that the overpayments had been improperly retained." Appellant Br. 21. Even if this allegation had been made in their first amended complaint, it does not rise to the level of specificity required for a fraud claim. See Fed. R. Civ. P. 9(b). The complaint's allegations of any intentionally deceptive conduct by the chiropractor defendants are, at best, vague and generalized.

10

v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009) (quotation marks omitted).

The district court correctly determined that the factual allegations in the first amended complaint do not specify which of the chiropractic defendants engaged in the allegedly fraudulent acts. As the district court found, the Waithes "fail to make allegations against particular defendants, choosing instead to lump the defendants together and make generalized claims." The first amended complaint also fails to allege scienter; instead, it vaguely asserts that someone at some point somehow "discover[ed] . . . over-compensation." Based on the Waithes' vague and generalized allegations about over-compensation, the district court did not err by granting the chiropractor defendants' motion to dismiss the fraud claim in count four.

## IV.

The Waithes also contend that the district court erred by dismissing their other fraud claim (count three), which is based on the defendants' alleged failure to disclose their "business relationship." When the chiropractor defendants moved to dismiss the first amended complaint, the district court granted that motion on count three but gave the Waithes an opportunity to amend that count, which they took. In their "Second Amended Complaint as to Count III—the Fraud Count,"

11

the Waithes again based their claim on the allegation that the defendants failed to disclose their "business relationship." The chiropractor and lawyer defendants moved to dismiss amended count three under Rule 12(b)(6), and the district court granted their motions.

The district court recognized that "[a] party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact." Baxter v. Fairfield Fin. Servs., Inc., 704 S.E.2d 423, 429 (Ga. Ct. App. 2010) (quotation marks and footnote omitted). The court determined that because chiropractors have no duty to disclose business relationships to their patients, the Waithes had failed to state a claim against the chiropractor defendants. The Waithes also failed to state a claim against the lawyer defendants because, even if Georgia law did impose on lawyers a duty to disclose their business relationships, the lawyer defendants made that disclosure with the "Attorney Recommendation Form" and the "Agreement of Patient and Attorney Regarding Payment of Benefits and Doctor's Lien." The court concluded that the Waithes were not only aware of, but also consented to, the business relationship they claim was undisclosed. We will address the Waithes' contentions about the chiropractor defendants first.

12

A.

During their initial visit to the chiropractic clinic, the Waithes signed several agreements that disclosed and described the relationship between the chiropractor defendants and the lawyer defendants. It borders on the frivolous for the Waithes to argue that they did not know about that relationship. Even if all of those agreements, taken together, did not disclose everything the Waithes wanted to know about defendants' business relationship, the Waithes cite no authority to support the proposition that under Georgia law a chiropractor or the business entities that manage a chiropractor's medical practice have a duty to disclose business relationships to patients.

They have failed to persuade us that the chiropractor defendants had a duty to disclose their business relationship with the lawyer defendants. Accordingly, the Waithes' fraud claim against the chiropractor defendants fails as a matter of law. See Baxter, 704 S.E.2d at 429. In any event, only one conclusion can be reached based on the agreements that the Waithes signed (and quoted in their complaint): they knew about the defendants' business relationship, and they consented to it. The district court did not err in granting the chiropractor defendants' Rule 12(b)(6) motion to dismiss on count three of the second amended complaint.

13

B.

As for the lawyer defendants, the district court also granted their Rule 12(b)(6) motion to dismiss the fraud claim in count three, finding that the Waithes were notified of the referral and payment arrangement between the lawyer defendants and the chiropractor defendants. The court found that the parties expressly consented to that arrangement when, as the second amended complaint admits, the Waithes signed the Attorney Recommendation Form during their first visit to the chiropractic clinic. That form states that the clinic was referring the Waithes to Robert D. Stein, among other lawyers, and that the Waithes would meet with an investigator from Stein's law firm. The second amended complaint also mentions that the Waithes signed the Agreement of Patient and Attorney Regarding Payment of Benefits and Doctor's Lien, which authorized their lawyers to pay directly to the chiropractic clinic proceeds of any settlement received. The district court correctly concluded that those agreements establish that the Waithes were aware of and consented to the business relationship that they now claim the lawyer defendants fraudulently failed to disclose. In their brief to this Court, the Waithes continue to insist that they "were induced to enter a fee contract with an attorney without full knowledge of the relationship of the attorney to the chiropractor," but the agreements the Waithes signed belie that contention, and

14

they do not claim that anyone prevented them from reading those agreements.

See Novare Group, Inc. v. Sarif, 718 S.E.2d 304, 308 (Ga. 2011) ("[T]he only type

of fraud that can relieve a party of his obligation to read a written contract and be

bound by its terms is a fraud that prevents the party from reading the contract.").

The district court correctly concluded that allegations of fraud against the lawyer

defendants asserted in count three of the second amended complaint fail to state a

claim.

V.

The Waithes next contend that the district court erred by granting summary

judgment in favor of the chiropractor defendants on the negligence claim based on

the defendants' failure to properly credit the Waithes' account.  The district court

explained that the Waithes' "theory is not perfectly clear, but appears to be that

[the chiropractor defendants] negligently failed to identify money that was to be

refunded" to the Waithes and kept for twenty-nine months the money that each of

the Waithes paid on their initial visit to the clinic ($200 total).  Although that $200

was refunded to the Waithes, they assert entitlement to interest.  The district court

stated that only after all insurance proceeds had been credited to the Waithes'

accounts was it clear to either party that the $200 constituted an overpayment.

Before the present lawsuit was filed, the Waithes current counsel contacted the

15

chiropractor defendants about the alleged overpayment, and they refunded the $200. The Waithes were unsure why they received the check but deposited the money without questioning it.

The district court ruled that Georgia's economic loss rule barred the Waithes' recovery of interest on the $200 based on a tort claim. The court recognized that "[t]he 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." Gen. Elec. Co. v. Lowe's Home Ctr., Inc., 608 S.E.2d 636, 637–38 (Ga. 2005). It is undisputed that the Waithes entered into a contractual relationship with the chiropractic clinic. The interest to which the Waithes claim entitlement is a purely economic loss. The district court concluded that, because Georgia law does not impose on a medical care provider a duty to pay interest on overpayments independent of any contractual duty, the economic loss rule barred the Waithes' recovery in tort. See City of Atlanta v. Lunsford, 124 S.E.2d 493, 494 (Ga. Ct. App. 1962) ("[T]here is no absolute right, independent of contract, express or implied, or of statute, to interest."). We agree. Because the Waithes have identified no authority indicating that Georgia law imposes a duty on the chiropractor defendants to pay interest on overpayments, their negligence claim, which seeks recovery of interest only, is barred by the economic loss rule.

16

VI.

The district court granted summary judgment in favor of the lawyer defendants on the Waithes' professional negligence, negligence, and breach of fiduciary duty claims. The Waithes contend that the district court "failed to give proper credence" to their "factual assertions . . . and the fact that they sustained harm as a result of the divided loyalties of the lawyer-defendants." The Waithes make a vague assertion that they were harmed by the lawyer defendants' alleged conduct, but they do not refer to any particular injury. They also assert that the lawyer defendants violated various Georgia State Bar Rules but do not explain how those alleged violations adversely affected the outcome of their personal injury case or otherwise injured them.

A showing of damages proximately caused by the defendant is required for claims of professional negligence, Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C., 453 S.E.2d 719, 720 (Ga. 1995), negligence, Rasnick v. Krishna Hospitality, Inc., 713 S.E.2d 835, 837 (Ga. 2011), and breach of fiduciary duty, see Tante v. Herring, 453 S.E.2d 686, 688 & n.5 (Ga. 1994). The district court found that the Waithes had failed to show any injury, and as a result, none of the three claims survived summary judgment. Of those three claims, the Waithes challenge the

17

district court's ruling only on professional negligence (or legal malpractice).[3]

To establish a legal malpractice claim under Georgia law, a plaintiff must show "that but for the attorney's error, the outcome would have been different." Szurovy v. Olderman, 530 S.E.2d 783, 786 (Ga. Ct. App. 2000) (quotation marks and alterations omitted). The Waithes make the vague assertion that they were harmed by the lawyer defendants' alleged misconduct, but they point to no particular injury, and they make no assertion that, but for that misconduct, they would have gotten a better result than the settlement that they agreed to accept.

Even so, the Waithes contend that the lawyer defendants committed malpractice by violating state bar rules that prohibit (1) direct solicitation of clients; (2) inadequate supervision of employees; and (3) conflicts of interest. As for direct solicitation, the Waithes argue that because the investigator for the lawyer defendants allegedly approached them about legal representation at the

---

[3]The Waithes assert in a heading to an argument section of their brief to this Court that the district court erred by granting summary judgment on their negligence, professional negligence, and breach of fiduciary duty claims against the lawyer defendants. The substance of their argument, however, is about a "breach of the applicable standard of care" in a legal malpractice action. Appellant Br. 29. Issues that are mentioned in passing but not argued are abandoned. See Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."). In any event, without evidence of injury none of those three claims can survive summary judgment.

18

chiropractic clinic, they did not have "significant personal choice" in selecting an attorney to represent them.  They make no showing, however, that they would have hired a different lawyer if they had not met with the lawyer defendants' investigator at the chiropractic clinic or that another lawyer would have obtained a better settlement.

As for the lawyer defendants' alleged inadequate supervision of employees, the Waithes argue that the law firm's investigator solicited clients at the chiropractic clinic and encouraged them "to sign an attorney client contract without providing adequate information."  They make no showing, however, that they would have hired a different lawyer if they had been provided "adequate information."  Nor do they reveal what was inadequate about the information that they did receive.

Finally, the Waithes contend that the lawyer defendants had a conflict of interest because they had the Waithes sign agreements in order to "assist the chiropractic organizations in get[ting] their fees" and because they wanted to ensure that the chiropractor defendants "would get a piece of the settlement." Those agreements, however, plainly state that the Waithes asked their doctor to recommend lawyers to handle their personal injury claims and that they asked their doctor to arrange for them "an appointment and/or interview" with those lawyers

19

or an investigator from their office.  Not only that, but it is undisputed that the lawyer defendants gave no proceeds from the Waithes' settlement to the chiropractor defendants.  Instead, the fees for chiropractic services, except for $200 that Waithes initially paid that was later refunded to them, were paid by the Waithes' insurance companies.

In the "Settlement Statement" that the Waithes signed, they agreed to a $7,750 settlement amount for each of them minus the agreed upon amount of attorney's fees and $250 in reimbursement for expenses for a net total of $4,400 for each of the Waithes.  The Waithes do not show, as they must to survive a motion for summary judgment on a legal malpractice claim, that they would have gotten a better settlement if they had been represented by a different lawyer or that a different lawyer would have charged a lower fee.  The Waithes failed to create a genuine issue of material fact about whether the lawyer defendants' conduct constituted legal malpractice.  The district court did not err by granting summary judgment in favor of the lawyer defendants on the Waithes' professional negligence claim.

## VII.

The Waithes acknowledge that their claim of entitlement to punitive damages and attorney's fees can survive only if their substantive claims are

20

"reinstated."  Because the district court did not err in dismissing some of the Waithes' claims under Rule 12(b)(6) and granting summary judgment on the other claims, no substantive claim survives as a basis for punitive damages or attorney's fees.

**AFFIRMED.**